IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RONALD HARTKE,                    :

       Plaintiff,

   v.                              :

ADVENT SVCS, LLC,

       Defendants.                 :

Case No. 3:23-cv-301

JUDGE WALTER H. RICE

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN
PART PLAINTIFF RONALD HARTKE'S MOTION FOR SUMMARY
JUDGMENT (DOC. #32); OVERRULING DEFENDANT ADVENT SVCS,
LLC'S MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. #33);
JUDGMENT TO ULTIMATELY ENTER IN FAVOR OF PLAINTIFF AND
AGAINST DEFENDANT ON PLAINTIFF'S CLAIM FOUR

---

This case is before the Court on two separate motions for summary

judgment. Plaintiff Ronald Hartke ("Plaintiff" or "Hartke") filed his Motion for

Summary Judgment on April 7, 2025. Doc. #32. Defendant Advent Svcs., LLC

("Defendant" or "Advent") filed a Response in Opposition on April 28, 2025, Doc.

#40, and Plaintiff filed a Reply in Support of his Motion on May 12, 2025. Doc. #44.

Defendant also filed a Motion for Partial Summary Judgment on April 7, 2025. Doc.

#33. Plaintiff Responded in Opposition on April 28, 2025, Doc. #41, and Defendant

filed a Reply in Support of their Motion on May 12, 2025. Doc. #43. Both Motions

are now ripe.

For the reasons stated herein, Plaintiff's Motion for Summary Judgment is SUSTAINED IN PART and OVERRULED IN PART and Defendant's Motion for Partial Summary Judgment is OVERRULED.

I.    **Procedural and Factual Background**

This case was originally filed in the Greene County Common Pleas Court, but was removed to this Court on October 5, 2023, pursuant to 28 U.S.C. § 1441. Doc. #1. Upon removal, this Court has exercised and continues to exercise subject matter jurisdiction over this case under 28 U.S.C. § 1332, as the parties are completely diverse from each other and the amount in controversy is in excess of $75,000.

This case involves a dispute between Advent SVCS, a Florida LLC which provides a variety of technical and digital services, and Ronald Hartke, an employee and salesman who helped Advent secure government contracts to provide services to various agencies. Prior to his employment with Advent, Hartke worked in the same role with another company, Ardent Technologies, Inc. ("ATI"). While working for ATI, Hartke became skilled at securing a category type of government contracts known as "8(a)" contracts. These contracts, governed by Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a), give preferred status to bidding companies whose owners are members of disadvantaged ethnicity or social classes. These preferred companies can take advantage of their 8(a) status for up to nine years, at which time, they are considered "graduated" from the 8(a) program. When a company

2

graduates from 8(a) eligibility, they can, and are encouraged, to take on a "mentorship" role with other 8(a) companies which still have eligibility.

After ATI graduated from 8(a) eligibility, they began mentoring Advent. In exchange, Advent used ATI as a subcontractor for at least some of the government contracts secured. To help implement the mentoring program, Advent hired an ATI employee who was experienced with the 8(a) program: Ronald Hartke. It appears that Hartke's employment with Advent was successful, with Hartke helping to secure seven contracts for Advent between June and September 2022.

However, the relationship between Hartke and Advent began to sour and Hartke was terminated as an employee on October 3, 2022. After his termination, Hartke returned to his employment with ATI and soon found himself in a similar arrangement where he helped mentor another 8(a) company, Liona Enterprises, on behalf of ATI.

Hartke filed this suit on May 19, 2023, bringing four claims: Breach of Contract in relation to the Commission Agreement ("Count One"); Violation of Ohio Rev. Code. (R.C.) § 1335.11 ("Count Two"); Tortious Interference ("Count Three"); and Declaratory Judgment ("Count Four"). Doc. #3. Advent's Answer contained three counterclaims: Breach of Contract in relation to the Commission Agreement ("Counterclaim One"); Breach of Contract in relation to the Non-Competition Agreement ("Counterclaim Two"); and Defamation ("Counterclaim Three"). Doc.

3

#4. Pursuant to an Agreed Motion and Stipulation of Partial Dismissal, the Court Dismissed Counterclaim Three on April 9, 2025. Doc. #37.

## II. Legal Standard

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact. *Id.* at 323; see also *Boretti v. Wiscomb*, 930 F.2d 1150, 1156 (6th Cir. 1991).

"Once the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). Once the burden of production has so shifted, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is not sufficient to "simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rule 56 "requires the nonmoving party to go beyond the [unverified]

4

pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324. "The plaintiff must present more than a scintilla of evidence in support of his position; the evidence must be such that a jury could reasonably find for the plaintiff." *Michigan Prot. & Advoc. Serv., Inc. v. Babin*, 18 F.3d 337, 341 (6th Cir. 1994).

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine dispute of material fact exists, a court must assume as true the evidence of the nonmoving party and draw all reasonable inferences in favor of that party. *Id.* at 255. If the parties present conflicting evidence, a court may not decide which evidence to believe. Credibility determinations must be left to the factfinder. 10A Wright, Miller & Kane, Federal Practice and Procedure Civil 3d § 2726 (1998). In determining whether a genuine dispute of material fact exists, a court need only consider the materials cited by the parties. Fed. R. Civ. P. 56(c)(3). "A district court is not . . . obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied*, 494 U.S. 1091

5

(1990). If it so chooses, however, a court may also consider other materials in the record. Fed. R. Civ. P. 56(c)(3).

### III.    Analysis

Plaintiff's motion seeks a finding that Defendant breached the Commission Agreement and owes him commissions that resulted from the seven contracts awarded to Advent. Plaintiff also seeks dismissal of Defendant's remaining two counterclaims. Doc. #32. Defendant seeks judgment in their favor on Claims One, Two, and Four, as well as Counterclaims One and Two. Doc. #33.

Plaintiff's Claim Three is brought under a theory of tortious interference caused by Defendant's failure to pay ATI. Neither Plaintiff nor Defendant seeks summary judgment on this claim. *See* Doc. #33, PageID #583 ("WHEREFORE, Defendant, ADVENT SVCS, LLC, respectfully requests that this Court grant summary judgment in its favor as to Claims One, Two, and Four of Plaintiff's Complaint."); Doc. #44, PageID #1039 n.3 ("[Claim Three] was rendered substantially moot by subsequent payments to ATI."). Therefore, this claim requires no examination.

The remaining claims and counterclaims match up into two categories: (1) Breach of Contract relating to the Commission Agreement (Claims One and Two and Counterclaim One) and (2) the applicability of the Non-Competition Agreement (Claim Four and Counterclaim Two). The Court examines each agreement in turn.

6

**A.      The Commission Agreement**

The Commission Agreement was signed on September 18, 2022, and contained a retroactive applicability date of June 1, 2022. Doc. #3-1. Hartke brings two claims that relate to the Commission Agreement. First, that Advent failed to pay his commissions on contracts he helped secure for Advent as required by the Commission Agreement, and second, that Advent's failure to pay the commissions is a violation of R.C. § 1335.11. Doc. #3, PageID #20–21. Advent's first counterclaim alleges that Hartke breached the Commission Agreement by failing to adequately perform his duties and by breaching confidentiality once he was no longer employed by Advent. Doc. #4, PageID #35–36.

The Commission Agreement states:

3. COMMISSION PAYMENTS. Advent will make commission payments to Employee based on 4% of Advent Revenue, less subcontract and fees paid to Ardent and contract access fees (CAFs) paid to government agencies, from Eligible Sales. Eligible Sales are defined as those awarded federal contracts to Advent generated by Employee while providing the services stated in Section 1. EMPLOYMENT.
. . .
8. TERM/TERMINATION. If Employee is in violation of this Agreement, Advent may terminate employment without notice and with compensation to Employee only from Eligible Sales, as defined in Section 3. COMMISSION PAYMENTS. The compensation paid under this Agreement shall be Employee's exclusive remedy. . [*sic*] Advent shall exercise this option by giving 30 days written termination notice to Employee. Employee will be allowed 2 weeks to correct/rebut the termination notice.

7

Doc. #3-1, PageID #24–26. The Commission Agreement also contains a choice-of-law provision stipulating that Florida law will govern disputes arising under the Commission Agreement. Doc. #3-1, PageID #27.

The contrast in the positions between Hartke and Advent can be largely attributed to differing readings of these clauses, particularly in what compensation is due to an employee who has been terminated. Under Advent's reading, the definition of "Eligible Sales," requires the present tense provision of services by the employee. Doc. #33, PageID #568. Advent believes that once Hartke was no longer employed, he was not providing services and was no longer eligible for commissions on the contracts. Hartke's reading of the Commission Agreement concludes that commissions were required to be paid, even to an employee who had been terminated, as long as those commissions stemmed from federal contracts which had been awarded during the employee's tenure. Doc. #44, PageID #1034.

Where possible, courts interpret contracts by analyzing only the items within the written agreement itself. *Savedoff v. Access Grp., Inc.*, 524 F.3d 754, 763 (6th Cir. 2008). However, when written contract terms appear contradictory, inconsistent, or ambiguous, courts may examine evidence from outside of the four corners of the agreement to help provide meaning. *Id.* At times, this may require making factual determinations of intent or reasonableness to provide meaning to

8

certain contractual terms. *Id.* (citing *Inland Refuse Transfer Co. v. Browning-Ferris Indus. of Ohio, Inc.*, 474 N.E.2d 271, 273 (Ohio 1984)).

The full Commission Agreement was helpfully attached as Exhibit A to the Complaint. Doc. #3-1, PageID #24–27. While there are portions of the contract, especially clause three and clause eight, which can be read to support one side or the other, "[i]n determining whether contractual language is ambiguous, the contract must be construed as a whole." *Savedoff*, 524 F.3d at 763 (quotation omitted). In other words, one does not view each clause in a vacuum; it must be read within the context of the greater agreement. While viewing the Commission Agreement as a whole, the applicable clauses (clause three and clause eight) can be viewed as contradictory and, consequently, ambiguous. Therefore, to determine the meaning of the contract, and particularly whether Hartke is entitled to commissions after his termination, evidence outside of the contract will be needed. Notably, both parties discussed outside evidence in their briefing. Doc. #33, PageID #569–71; Doc. #41, PageID #1001–02.

Yet, at the summary judgment stage, the Court is not tasked with making a final determination as to which argument is stronger. Here, the Court need only determine whether a jury could reasonably find for either side. It would be reasonable for a jury to agree with Hartke and find that the parties intended commission payments to continue past termination for contracts awarded during

9

employment. It would also be reasonable for a jury to agree with Advent and determine that the parties worked together to write the contract in such a way that any right to future commission payments ceased upon Hartke's termination. Therefore, as a reasonable jury could find for either side, summary judgment is not appropriate on the issue of whether the Commission Agreement requires payment after termination for contracts awarded prior to termination.

Plaintiff's second claim is brought under Ohio law. Advent believes this claim should be dismissed because the Commission Agreement stipulates that it shall be governed by Florida law, which does not have an analogous provision. Doc. #33, PageID #572–73. In its response in opposition, Advent concedes that the Florida choice-of-law provision would not apply to this claim, but maintains that it should govern the remaining claims under the Commission Agreement. Doc. #40, PageID #961.

Advent's argument against the R.C. § 1335.11 claim rests on three grounds: (1) that Hartke was an employee of Advent, rather than a sales representative; (2) that Ohio does not have the most significant relationship to the statutory claim; and (3) that Hartke has been paid all commissions that he is owed under the statute. Doc. #40, PageID #960–65. Whether someone is an employee, rather than a sales representative, is dependent on the particular facts of each case. *Meek v. Tom Sexton & Assoc., Inc.*, 839 N.E.2d 437, 440 (Ohio Ct. App. 2005). Certainly, the

10

employment contract in this dispute repeatedly used the word "employee" when referring to Hartke, but this is not dispositive. Instead, courts look at the nature of the employment to determine employee status. *Id.*

In this case, Hartke reported to Advent weekly and informed the company what he was working on and what he planned to work on. When Hartke identified a contract that he felt was worth pursuing, he recommended it to Advent who retained final authority to decide whether to submit a bid for the contract. In addition, Hartke filled out a W-4 form when hired by Advent and was given system access in the same way Advent employees were. To Hartke's credit, there is certainly evidence that weighs against a finding that he was an employee. For example, the methods he used were primarily ones that he had developed himself and became proficient in and it seems that he was given control over his hours and discretion regarding the contracts he pursued. It appears that Hartke was paid largely, if not completely, by commission based on the contracts he identified and secured.

Ultimately, the question on hand is whether Hartke has established the absence of an issue of material fact. He has not done so. He may ultimately be correct that the relationship between him and Advent was one where he worked as a sales representative, rather than as an employee, but this Court sees this as an issue requiring a factual determination at trial.

11

Advent argues that Ohio law, and by extension R.C. § 1335.11, should not apply in this case. Doc. #33, PageID #572. Section 1335.11(F) is clear in that parties may not invoke a choice-of-law provision to prevent the statute's enforcement. Without a choice-of-law provision, this Court's role is to interpret the contract and all causes of action stemming from it, in the same manner and by the same instruments that an Ohio state court would. Advent argues that under these same facts, an Ohio state court would likely find that Ohio law does not apply. *Id.* When confronted with a case where a court needs to determine which state's laws to use, Ohio has adopted the Second Restatement of Conflict of Laws in its entirety to help guide this decision. *Am. Interstate Ins. Co. v. G & H Serv. Ctr., Inc.*, 861 N.E.2d 254 (Ohio 2007).

Generally, under the Restatement, Ohio law will govern as long as Ohio is the jurisdiction with the most significant contacts. *Id.*; RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 188 (AM. L. INST. 1971). In this case, that is not an easy thing to determine; the contract is between a Florida LLC and an Ohio resident and covers remote employment where Hartke worked to secure contracts all over the country. It appears that Florida and Ohio have almost equal contacts with the case.

The Restatement also instructs a court to protect fundamental policy choices of the states. RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 187 (AM. L. INST. 1971). The comments within the Restatement make it clear that when a state chooses to

12

pass a law to protect parties to a contract, a clear policy decision has been made. *Id.* cmt. g. By passing R.C. § 1335.11, and by specifically including a provision invalidating any attempt to circumvent the statute, Ohio made it clear that it wanted courts to enforce this provision.[1] This Court will not oppose that decision. Therefore, while this Court cannot conclusively state that R.C. § 1335.11 has been invoked due to the nature of the employment status, the Court can conclusively state that Ohio's choice-of-law provision allows its enforcement.

Finally, turning to Advent's first Counterclaim, it claims that Hartke breached the Commission Agreement in two ways. First, it claims that Hartke was insubordinate and unethical in violation of the contractual provision requiring him to perform his work duties to the best of his abilities. Second, it claims that Hartke failed to maintain information in confidence after his termination. Doc. #4, PageID #35–36. Hartke claims that the Commission Agreement requires that he use due care when performing duties required by the terms of the Commission Agreement, rather than all duties required by Advent, and moreover, he claims that Advent suffered no damages stemming from the alleged failure to adequately perform. Doc. #32, PageID #180–85. To justify summary judgment, Advent must show that

---

[1] The Court notes once more that Florida does not have an analogous statute to R.C. § 1335.11. If Ohio's policy choices could be carried out under a similarly-designed Florida Statute, it is possible that this alternative could displace the application of Ohio's statute.

Hartke breached the terms of his employment, and Hartke must show either that he did not breach the terms of his employment, or that no damages came about because of the breach.

Like many other portions of this case, this issue is replete with factual questions not fit to be determined on a motion for summary judgment. In its letter to Hartke notifying him of his termination, Advent lists several of his actions that they feel constituted unethical and insubordinate actions. Doc. #33-3, PageID #637–38. Perhaps these actions were indeed insubordinate and in breach of the contract, but, perhaps, they were not. Likewise, Advent alleges that Hartke revealed confidential information to Liona Enterprises after his termination from Advent. Doc. #33-7, PageID #671–74. The only evidence to support this allegation is an affidavit by Advent's CEO making those claims. Yet, this affidavit is opposed by Hartke's own affidavit claiming he never disclosed confidential information. Doc. #41-1, PageID #1017–19. It would be improper for the Court to attempt to weigh the credibility of the affiants and make a factual determination at this stage. Given the evidence presented, a jury could reasonably find for either side on the issue of breach. Therefore, Advent has failed to show that Hartke breached the terms of his employment and Hartke has failed to show that he did not breach the terms.

Hartke may still justify summary judgment on this issue if he is able to demonstrate that, regardless of whether he breached the Commission Agreement,

14

there were no damages. Advent argues that they need not prove damages at this stage since they moved for summary judgment on liability only, deferring a damage assessment until trial. Doc. #40, PageID #967. In support, they cite to several cases in which the courts found that the specific amount of damages need not be proven in such a situation. *Id.* However, there is an important difference between showing a specific amount of damages and showing the presence of any damages at all. The cases Advent cites do not disagree with this point. While the Court may be willing to postpone an exact determination of damages until the appropriate time, Advent must successfully show the presence of at least some damages to pursue this counterclaim.

Hartke has not hidden the fact that after his termination from Advent, he began working for Liona Enterprises, another company who specializes in bidding for 8(a) contracts. However, despite this knowledge and the ability to view public information regarding the contracts Liona Enterprises was awarded, Advent has not produced any evidence that Liona Enterprises successfully secured any contracts in which Advent was also bidding. Under Fed. R. Civ. P. 56, "[o]nce the moving party has met its initial burden, the nonmoving party must present evidence that creates a genuine issue of material fact making it necessary to resolve the difference at trial." *Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1245 (6th Cir. 1995). Hartke's Motion for Summary Judgment meets its initial burden for showing

15

a lack of damages, requiring Advent to produce evidence that creates a material fact on the issue of whether they experienced damages relating to Hartke's employment. Despite understanding this requirement, Advent has failed to present evidence showing a genuine issue regarding the existence of damages. Therefore, summary judgment is justified regarding Advent's first counterclaim.

In summary, this Court concludes that neither Hartke nor Advent have provided evidence sufficient to show the lack of an issue of fact regarding whether Hartke is owed commission payments after his termination. Additionally, the Court holds that R.C. § 1335.11 is applicable, as long as Hartke is determined to have been working as a sales representative, rather than an employee. Finally, Advent failed to show that there is a genuine issue of material fact regarding whether it suffered damages as a result of Hartke's alleged disclosure of confidential information. Therefore, summary judgment is justified in part, and Advent's Counterclaim One is DISMISSED.

### B.    The Non-Competition Agreement

Unlike the Commission Agreement, the parties agree that Ohio law governs the Non-Competition Agreement, Doc. #33, PageID #574; Doc. #41, PageID #1008. The Non-Competition Agreement executed between Hartke and Advent clearly requires that the Hartke will not "directly or indirectly, own, manage, operate, control, or participate in the ownership, management, operation or control of any

16

business that is in competition" with Advent for a period of one year following the end of his employment with Advent. Doc. #4-1, PageID #40. Hartke's basis for summary judgment is that this agreement holds no force because it was superseded by the later Commission Agreement and because Hartke received no consideration in exchange for entering into the agreement. Doc. #32, PageID #171.

Conversely, Advent argues that the Non-Competition Agreement is active and enforceable. Doc. #33, PageID #573–80. In outlining its position, Advent analyzes how the *Raimonde* factors apply in this case to produce an enforceable non-complete clause. *See Raimonde v. Van Vlerah*, 325 N.E.2d 544 (Ohio 1975). In response, Hartke argues that even if the Non-Competition Agreement was not superseded, the *Raimonde* factors lead to a finding on non-enforceability. Doc. #41, PageID #1007–12.

The first issue is whether the Non-Competition Agreement was supported by consideration. Without consideration, any purported contract is void *ab initio*. 17 C.J.S. *Contracts* § 120 (2025). Recognizing that continued employment can constitute adequate consideration, Hartke claims that he was not an employee of Advent when the Non-Competition Agreement was consummated in July 2022. Doc. #32, PageID #186. Hartke's theory appears to argue that only the final form involved in the hiring process, the last one needed to begin earning pay, is supported by consideration, and that all prior forms are unsupported if

17

consideration is not offered in the interim. While this theory holds little sway—some forms signed as part of the hiring process must still be enforceable without independent consideration—the Court recognizes that there are some limits.

If a contractual agreement is to be supported by the consideration of new employment, it must part of the hiring process. In some cases, this may be a difficult determination, but not here. In this case, Hartke recognized that the Non-Competition Agreement was a part of the hiring and on-boarding process. Doc. #36, PageID #812 ("[The Non-Competition Agreement] was the last step of the onboarding process that Tomas was asking me to complete in order to get paid"). Therefore, as part of the hiring process, it is supported by the consideration of employment as an employee or sales representative.

Hartke next argues that the Non-Competition agreement, signed in July 2022, was superseded by the Commission Agreement, which was signed in September 2022, and therefore no longer applies. Doc. #32, PageID #185. As support, he points to the merger clause in the Commission Agreement which states: "ENTIRE AGREEMENT. This Agreement contains the entire agreement of the parties and there are no other promises or conditions in any other agreement whether oral or written. This Agreement supersedes any prior written or oral agreements between the parties." Doc. #3-1, PageID #26. Advent believes that both agreements are still

18

applicable, and that the merger clause does not apply to separate and distinct contracts, only to those covering similar subject matter. Doc. #40, PageID #968–70.

This issue comes down to understanding the effect that a subsequent agreement has on a prior agreement. Ordinarily, a prior agreement that covers the same subject matter as a subsequent, fully integrated[2] agreement, is considered preempted. However, where the prior agreement's subject matter is sufficiently different from the subsequent agreement to the point where the parties would naturally omit it, the prior agreement remains enforceable. A determination of the scope of the agreements is a preliminary question that a court must determine. RESTATEMENT (SECOND) OF CONTRACTS § 213 cmt. b (AM. L. INST. 1981).

Notwithstanding Hartke's arguments to the contrary, it appears to the Court that the parties intended the Non-Competition Agreement to continue to be enforceable after the Commission Agreement was signed. One of Hartke's assertions is that despite its title, the Non-Competition Agreement primarily involves restrictions on non-disclosure rather than restrictions on future employment. Doc. #44, PageID #1040. Notably, Advent's Second Counterclaim is

---

[2] An agreement is considered "fully integrated" when the parties intend the written agreement to cover the full breadth of their contractual relationship. While the presence of a merger clause, like the one included in the Commission Agreement here, may provide some evidence that the parties intended the contract to cover the full extent of the agreement, it is not dispositive. *Galmish v. Cicchini*, 734 N.E.2d 782, 790 (Ohio 2000).

premised on the restriction on future employment covenants within the Non-Competition Agreement, rather than the non-disclosure clauses. Even if Hartke was correct and that the subsequent non-disclosure clauses in the Commission Agreement invalidated the equivalent clauses in the Non-Competition Agreement, the employment restrictions would remain unaffected. Therefore, as it relates to the employment restrictions, the Court finds that the Non-Competition Agreement remains active for trial purposes.

The fact that the employment restrictions remain active, does not necessarily mean that they will be enforceable. The Supreme Court of Ohio has identified at least nine factors to determine whether a non-competition agreement is enforceable:

(1) The absence or presence of limitations as to time and space;
(2) Whether the employee represents the sole contact with the customer;
(3) Whether the employee is possessed with confidential information or trade secrets;
(4) Whether the covenant seeks to eliminate competition which would be unfair to the employer or merely seeks to eliminate ordinary competition;
(5) Whether the covenant seeks to stifle the inherent skill and experience of the employee;
(6) Whether the benefit to the employer is disproportional to the detriment of the employee;
(7) Whether the covenant operates as a bar to the employee's sole means of support;

(8) Whether the employee's talent which the employer seeks to suppress was actually developed during the period of employment; and

(9) Whether the forbidden employment is merely incidental to the main employment.

*Raimonde v. Van Vlerah*, 325 N.E.2d 544, 547 (Ohio 1975) (citation modified). While a court has the power to alter a noncompetition provision that is unreasonable, courts have been cautioned to strictly adhere to the *Raimonde* factors. *AK Steel Corp. v. ArcelorMittal USA, L.L.C.*, 55 N.E.3d 1152, 1156 (Ohio Ct. App. 2016). Predictably, Hartke believes these factors weigh in his favor, while Advent believes they necessitate a finding of enforceability. Doc. #33, PageID #575–77; Doc. #41, PageID #1008–11.

While the Non-Competition Agreement has no restrictions on geographic space, it does restrict itself to a one-year period. As Hartke recognizes, the second factor weighs in Advent's favor. Doc. #41, PageID #1008. As to the third factor, the Court believes it is likely that Hartke did possess some confidential information regarding Advent's pricing strategies and capabilities. His argument that this information could have been gained by any member of the public via a FOIA request is unavailing. Doc. #41, PageID #1009.

The fourth factor hinges on whether the restrictive covenant attempts to prevent unfair competition or merely ordinary competition. While, as stated above, the Court believes it likely Hartke possessed some inside knowledge of Advent's

21

pricing and capabilities, the Court cannot view this factor as weighing in favor of Advent. The industry of 8(a) contracting is reasonably large, and despite Hartke continuing to work for Liona Enterprises after his termination with Advent, there is no evidence that Hartke attempted to bid on any of the same projects that Advent did. This creates some doubt in the Court's mind whether the restrictive covenant was designed to protect Advent's business interests at all, or whether it existed merely to penalize Hartke after his relationship with Advent ended. In sum, the Court views this factor as weighing in favor of neither party.

The other factors, the fifth, sixth, seventh, and eighth, all weigh in favor of Hartke and a finding that the noncompetition covenant is not enforceable. Hartke came into employment with Advent with inherent skills he developed at ATI that Advent hoped to learn from, not the other way around. Therefore, Advent's attempt to stifle those skills that Hartke already possessed, and upon which Hartke depended for his livelihood, lean toward a finding that the covenant was unreasonable.

When weighing all the *Raimonde* factors together, the Court finds that the noncompetition agreement as written and applied to Hartke is unreasonable and unenforceable. Because the non-competition agreement is unenforceable, Summary Judgment is justified to Plaintiff on Claim Four, which seeks declaratory

judgment that the Non-Competition Agreement is unenforceable, and on Defendant's Counterclaim Two.

## IV. Conclusion

For the reasons set forth above, Plaintiff's Motion for Summary Judgment, Doc. #32, is SUSTAINED IN PART and OVERRRULED IN PART. Additionally, Defendant's Motion for Partial Summary Judgment, Doc. #33, is OVERRULED. Specifically, Plaintiff is entitled to summary judgment on Plaintiff's Claim Four and Defendant's Counterclaim One and Two. Judgment will ultimately be granted for Plaintiff on Plaintiff's Claim Four and Defendant's Counterclaims One and Two.

Genuine issues of material fact preclude summary judgment on Plaintiff's Claims One and Two, and neither party sought summary judgment on Claim Three.[3]

Date: July 21, 2025

Walter H. Rice

WALTER H. RICE
UNITED STATES DISTRICT JUDGE

---

[3] Plaintiff himself has admitted that Claim Three has become substantially moot, yet he has not dismissed this claim on his own prerogative, nor did Defendant move for summary judgment on this claim. Doc. #33, PageID #583; Doc. #44, PageID 1039 n.3.