IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| RONALD HARTKE, | : | |
| Plaintiff, | | Case No. 3:23-cv-301 |
| v. | : | JUDGE WALTER H. RICE |
| ADVENT SVCS, LLC, | | |
| Defendants. | : | |

---

DECISION AND ENTRY SUSTAINING IN PART AND OVERRULING IN PART DEFENDANT'S MOTION IN LIMINE (DOC. #50); OVERRULING AS MOOT DEFENDANT'S *DAUBERT* MOTION TO PARTIALLY EXCLUDE TESTIMONY OF RONALD HARTKE (DOC. #51)

---

Before the Court are two motions filed by Defendant Advent Svcs., LLC ("Defendant" or "Advent"). The first is a Motion in Limine, seeking to exclude three types of evidence from introduction at trial. Doc. #50. The second motion is a *Daubert* Motion to Partially Exclude Testimony of Ronald Hartke. Doc. #51. Plaintiff Ronald Hartke ("Plaintiff" or "Hartke") responded in opposition to both motions, Doc. #52, and Defendant filed a reply in support of both. Doc. #53.

For the reasons stated herein, Defendant's Motion in Limine, Doc. #50, is SUSTAINED IN PART and OVERRULED IN PART. Defendant's *Daubert* Motion to Partially Exclude Testimony of Ronald Hartke, Doc. #51, is OVERRULED AS MOOT.

## I.  Background

This case was originally filed in the Greene County Common Pleas Court, but was removed to this Court on October 5, 2023, pursuant to 28 U.S.C. § 1441. Doc. #1. Upon removal, this Court has exercised and continues to exercise subject matter jurisdiction over this case under 28 U.S.C. § 1332, as the parties are completely diverse from each other and the amount in controversy is in excess of $75,000.

This case involves a dispute between Advent, a Florida LLC which provides a variety of technical and digital services, and Ronald Hartke, an employee and salesman who helped Advent secure government contracts to provide services to various agencies. Prior to his employment with Advent, Hartke worked in the same role with another company, Ardent Technologies, Inc. ("ATI"). While working for ATI, Hartke became skilled at securing a category of government contracts known as "8(a)" contracts. These contracts, governed by Section 8(a) of the Small Business Act, 15 U.S.C. § 637(a), give preferred status to bidding companies whose owners are members of disadvantaged ethnicity or social classes. These preferred companies can take advantage of their 8(a) status for up to nine years, at which time, they are considered "graduated" from the 8(a) program. When a company graduates from 8(a) eligibility, they can, and are encouraged, to take on a "mentorship" role with other 8(a) companies which still have eligibility.

2

After ATI graduated from 8(a) eligibility, it began mentoring Advent. In exchange, Advent used ATI as a subcontractor for at least some of the government contracts secured. To help implement the mentoring program, Advent hired Hartke, an ATI employee who was experienced with the 8(a) program. It appears that Hartke's employment with Advent was successful, as he helped secure seven contracts for Advent between June and September 2022. Notably, and central to many of the issues currently raised, these contracts contained provisions whereby the federal government could renew the contract (or exercise the option to renew the contract). The number of potential renewals varied from contract to contract, with some permitting renewal into 2027.

However, the relationship between Hartke and Advent degraded and Hartke was terminated as an employee on October 3, 2022. Hartke filed this suit on May 19, 2023, bringing four claims: Breach of Contract in relation to the Commission Agreement ("Count One"); Violation of Ohio Rev. Code. (R.C.) § 1335.11[1] ("Count Two"); Tortious Interference[2] ("Count Three"); and Declaratory Judgment ("Count Four"). Doc. #3. Advent's Answer contained three counterclaims: Breach of Contract

---

[1] Plaintiff has recently filed a motion to conditionally dismiss Count Two, pending assurance that doing so would not open the door for an award of attorney fees against him. Doc. #54.
[2] Plaintiff himself has admitted that Claim Three has become substantially moot, yet he has not dismissed this claim on his own prerogative, nor did Defendant move for summary judgment on this claim. Doc. #33, PageID #583; Doc. #44, PageID 1039 n.3.

in relation to the Commission Agreement ("Counterclaim One"); Breach of Contract in relation to the Non-Competition Agreement ("Counterclaim Two"); and Defamation ("Counterclaim Three"). Doc. #4. Pursuant to an Agreed Motion and Stipulation of Partial Dismissal, the Court Dismissed Counterclaim Three on April 9, 2025. Doc. #37. On July 21, 2025, summary judgment was granted on Claim Four and both remaining counterclaims, leaving Plaintiff's first three claims as the only active claims. Doc. #49.

## II.  Legal Standard

Although neither the Federal Rules of Evidence nor the Federal Rules of Civil Procedure explicitly authorizes the Court to rule on an evidentiary motion in limine, the Supreme Court has noted that the practice of ruling on such motions "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). The purpose of a motion in limine is to allow the Court to rule on issues pertaining to evidence in advance of trial in order to both avoid delay and ensure an evenhanded and expeditious trial. *See Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp.2d 844, 846 (N.D. Ohio 2004) (citing *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997)). Also, pretrial orders often save the parties time and costs in preparing for trial and presenting their cases.

Courts are generally reluctant to grant broad exclusions of evidence in limine, however, because "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Indus.*, Inc., 2 F. Supp.2d 1385, 1388 (D. Kan. 1998); *accord Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). A court should not make a ruling in limine unless the moving party meets its burden of showing that the evidence in question is clearly inadmissible. *Indiana Ins. Co.*, 326 F. Supp.2d at 846; *Koch*, 2 F. Supp.2d at 1388. If this high standard is not met, evidentiary rulings should be deferred so that the issues may be resolved in the context of the trial. *Indiana Ins. Co.*, 326 F. Supp.2d at 846.

> Fed. R. Evid. 702, governing expert witness testimony, provides as follows:
>
> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
> (b) the testimony is based on sufficient facts or data;
> (c) the testimony is the product of reliable principles and methods; and
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the Supreme Court held that the trial judge must act as a gatekeeper, excluding expert witness testimony that is not both relevant and reliable. *Id.* at 589. Relevant

5

testimony is that which has a "tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Civ. P. 401.

Expert witness testimony must also rest on a reliable foundation. *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 529-30 (6th Cir. 2008). Reliable evidence is "supported by appropriate validation." *Daubert*, 509 U.S. at 590. In determining whether expert witness testimony is sufficiently reliable, the court must focus "on [the] principles and methodology, not on the conclusions they generate." *Id.* at 595. Factors to be considered include "testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific community." *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94).

When a party moves to exclude expert witness testimony, an evidentiary hearing is not necessarily required. *Greenwell v. Boatwright*, 184 F.3d 492, 498 (6th Cir. 1999).

### III. Analysis

#### A. Defendant's Motion in Limine

Defendant presents three categories of evidence that they believe should be excluded from trial: (1) Defendant Advent's corporate revenues or profits beyond the specific base contracts at issue; (2) the legal proceeding between ATI and

6

Advent; and (3) any additional damages beyond Advent's 4% portion of the commission agreement, along with damages related to the option contract renewals. Doc. #50, PageID #1085. The Court takes each of these issues in turn.

First, Defendant seeks to limit Plaintiff's introduction of Advent's revenues or profits, outside of the contracts that Plaintiff has identified as central to this case. Defendant argues that introduction of this evidence would serve only to inflame the jury, painting them as "Goliath" to Plaintiff's "David." Doc. #50, PageID #1087–88. Plaintiff believes that this evidence is necessary to show the before-and-after effect of Advent's mentorship agreement with ATI. Doc. #52, PageID #1114.

The Sixth Circuit has made it clear that "[a]ppealing to the sympathy of jurors through references to financial disparity is improper." *City of Cleveland v. Peter Kiewit Sons' Co.*, 624 F.2d 749, 757 (6th Cir. 1980) (quotation omitted). Moreover, while Federal Rule of Evidence 401 presents a low bar to relevancy, permitting evidence that "has any tendency to make a fact more or less probable than it would be without the evidence," in this case, the pending issues revolve around what commissions are owed to Plaintiff under the employment contract. Specifically, the parties will present evidence on the meaning of the employment contract, and the jury will make a determination and calculate damages based on their finding. Importantly, these damages will be based on the procured contracts, not on the overall wealth of Defendant. While the Court recognizes that this evidence might be

7

proper if punitive damages were sought, Plaintiff is not attempting to seek such damages here.

If Plaintiff carries his burden and convinces the jury that he is owed commissions from the contracts he procured while employed at Advent, the financial information relating to the contracts at issue will certainly be relevant. In addition, an explanation that Advent and ATI agreed to engage in mentorship may be relevant to understanding the context of Hartke's employment. However, even if Plaintiff carries his burden, it is difficult to imagine how Advent's unrelated income, for example income earned through contracts having nothing to do with Plaintiff, would be relevant to a calculation of damages. For that reason, this portion of Defendant's Motion in Limine is SUSTAINED.

Defendant's second category of evidence it wishes to exclude from trial relates to a separate lawsuit between ATI and Advent. This other lawsuit evidently involves claims of an alleged equity agreement between ATI's owner and Advent's owner. Defendant here claims that discussion of the separate lawsuit would be irrelevant to this case and would create confusion in the minds of the jury as well as painting Defendant as a party with a predisposition for illegal acts. Doc. #50, PageID #1088–90.

Plaintiff argues that his view of the case, that Advent fired Hartke in bad faith once Advent had secured the contracts it desired, requires a reference that ATI was

8

subjected to the same injustices as Hartke. Doc. #52, PageID #1114–15. Moreover, Plaintiff points out that many of the same witnesses may testify in both cases. For these witnesses, the prior testimony in the other lawsuit may provide material to use for impeachment in this trial. As a result, Plaintiff argues, it would be improper to rule on a motion in limine barring such testimony until it is clear whether and how such testimony may be used.

As stated above, this lawsuit covers the narrow issue of Plaintiff's entitlement to unpaid commissions for the set of contracts he has identified. As such, the mere existence of a separate lawsuit between ATI and Advent does not make any issue in this case more or less probable and is irrelevant under Fed. R. Evid. 401. However, should testimony in the separate lawsuit become suitable fodder for impeachment in this case, it may become relevant to the individual witness's credibility determination. Because of this, the Court cannot conclusively rule out any evidence of the other trial at this time.

In short, the Court provides the following guidance on the issue of the separate lawsuit between ATI and Advent: An accurate telling of the story in this case will undoubtedly contain references to ATI and Advent. However, reference to their separate lawsuit will presumptively be inadmissible in this case, unless there is a showing from either party that the evidence is needed for impeachment purposes and that the probative value is not substantially outweighed by unfair

9

prejudice, confusion of the issues, or any other danger outlined in Fed. R. Evid. 403. To that extent, the Court OVERRULES this portion of the Motion, subject to renewal at trial upon a proffer of evidence showing that the reference to the trial is appropriate. Neither party may mention the other lawsuit between ATI and Advent in voir dire, opening statements or on examination of any witness unless and until the Court grants permission after the above-referenced proffer

Defendant's third stated ground for their Motion in Limine is to preclude Plaintiff from seeking any other damages beside those connected with the base contracts. Doc. #50, PageID #1091–94. In other words, Defendant wants to limit Plaintiff from arguing that he is entitled to commissions connected with the renewals of contracts that he helped secure. Additionally, Defendant wants to ensure that Hartke cannot claim that Advent is liable for commissions that ATI owes to Hartke.

Plaintiff does not seem to respond to this second point, regarding commissions that ATI owes to Hartke, and thus concedes the point. *See Humphrey v. U.S. Attorney General's Off.*, 279 F. App'x 328, 331 (6th Cir. 2008). However, Plaintiff disputes Defendant's request as it relates to the renewals. Plaintiff claims that he has consistently claimed entitlement to commissions under the renewals and that Defendant's attempt to bar them from trial is more apt for a motion for summary judgment. Doc. #52, PageID #1116–17.

This case involves Plaintiff's alleged entitlement to commissions connected with contracts he helped secure for Defendant. While the initial Complaint did not specifically refer to options or renewals of the contracts, Plaintiff's filings have made it clear that he views the renewal of the base contracts as extensions under which he is owed commissions. Docs. #3 & 32. On the other hand, Defendant has made it clear that they believe the renewals are separate agreements and Plaintiff is not owed commission for these periods. Doc. #33.

As this Court stated in a previous Decision in this case, a determination of when Plaintiff was no longer entitled to commission payments is a determination to be made by the jury at trial. Doc. #49, PageID #1070–71. If the jury agrees with Plaintiff and finds that Defendant is liable for commissions lasting throughout the performance of the base contract, they may also find that the renewals already exercised are considered part and parcel of the base contract and subject to commission liability. It would thus be improper for the Court to remove this determination from the jury's purview by granting this portion of Defendant's Motion in Limine. Therefore, this portion of Defendant's Motion in Limine is SUSTAINED IN PART and OVERRULED IN PART. Plaintiff may not present evidence concerning allegations that Advent is liable for commissions owed by ATI, but Plaintiff may present evidence and argument that Advent is liable for commissions owed in connection with previously-exercised renewals of the contracts at trial.

11

### B. *Daubert* Motion to Partially Exclude Testimony of Ronald Hartke

Defendant's second motion seeks to preclude Hartke from testifying as an expert and to limit Hartke's ability to rely on the probability of the federal government exercising the renewals that relate to the contracts to which he is asserting claims. Doc. #51, PageID #1103. Defendant provides two theories to support his claim that Hartke cannot testify as an expert: (1) Hartke failed to establish that he is sufficiently qualified to testify as an expert and (2) Hartke failed to make the necessary disclosures under Fed. R. Civ. P. 26(a)(2)(C). *Id.* at PageID #1103–04. Defendant also argues that, assuming Hartke is permitted to testify as an expert, he lacks sufficient knowledge to opine on the frequency with which contracts like the ones at issue here are renewed by the federal government. *Id.* at PageID #1105–06.

Plaintiff's response to the motion turns on a question of law: whether the potential future revenue is compensable now or whether it cannot be sought until the renewal occurs. Doc. #52, PageID #1117–19. Some contracts contain renewal options that extend the performance under the contract into 2027. Plaintiff posits that the law views these future renewals as speculative, given that the federal government or Advent itself may decide not to exercise the renewal option. If this view is correct, Plaintiff says, he would not need to testify as an expert at all. It is

only if these future renewals are properly decided in this case that he desires to provide testimony on the odds that the renewals would be exercised.

Defendant does not engage with Plaintiff's theory about the renewals, beyond agreeing that the potential renewals are indeed speculative and reiterating that the intent of this case is to provide closure. Doc. #53, PageID #1147–48. Instead, Defendant mentions again that Plaintiff failed to comply with the required disclosures and that the failure to do so was neither harmless nor substantially justified. *Id.* at PageID #1147.

In analyzing this issue, perhaps it is best to start with what both sides agree on. Here, both Plaintiff and Defendant agree that asking a jury to decide whether or not the future renewal options will be exercised would be asking the jury to engage in improper speculation. As such, evidence relating to that issue should likely be excluded and the issue isolated from the present dispute. Moreover, this path seemingly provides satisfaction to both parties in that Plaintiff has stated that he would not seek to testify as an expert if that issue were found to be outside of the present case. This presents the very result that Defendant desired: that Plaintiff will not act as an expert witness.

The Court understands Defendant's point that this case should result in finality to the parties. However, any claims to commissions owed in connection with options that may or may not be renewed are simply speculative and unripe to be

13

adjudicated here. This is a separate issue from a determination under options which have already been exercised. This latter category is not speculative and does not require the jury to attempt to forecast whether a future event will or will not occur.

The Court recognizes Defendant's contention that the purpose of this proceeding should be to provide finality to the dispute, but such a purpose, admirable and well-intentioned as it is, cannot overcome the fact that speculative injuries cannot be decided by this Court. However, regardless of the jury's determination—whether they decide Hartke is not due commissions, due commissions on the base contracts only, or due commissions on the already-exercised options as well—the parties will likely be able to raise issue preclusion in any subsequent lawsuit filed on the issue. If the jury decides that Hartke is not due commissions at all or only on the base contracts but not the already-exercised options, such a finding may very well preclude him from seeking commissions on the remaining options if and when they are exercised. Conversely, if Hartke is determined to be due commissions on the contracts, including the options which have already been exercised, such a finding may preclude Advent from successfully challenging his right to commissions from other options if and when they are exercised.

In summary, Plaintiff's failure to submit the required Rule 26(a)(2)(C) disclosures presumptively rules out his testimony as an expert. Additionally, the

exercise of future renewal options is speculative and outside the scope of this case. For that reason, such testimony would be barred from presentation at trial under Fed. R. Evid. 401. As Plaintiff has admitted he will not be seeking to provide expert testimony on any other potential topics, Defendant's motion is unnecessary and will not provide any relief if the Court were to rule favorably. By definition, therefore, the *Daubert* motion is rendered moot. *See Parsons Inv. Co. v. Chase Manhattan Bank*, 466 F.2d 869, 871 (6th Cir. 1972). As a result, Defendant's Motion to Partially Exclude Testimony of Ronald Hartke, Doc. #51, is OVERRULED AS MOOT.

### IV. Conclusion

For the foregoing reasons, Defendant's Motion in Limine, Doc. #51, is SUSTAINED IN PART and OVERRULED IN PART. Specifically, Plaintiff is precluded from discussing Advent's corporate revenues or profits beside those associated with the contracts at issue. References to Advent's separate lawsuit against ATI are presumptively barred from presentation at trial, subject to a proffer, outside the presence of a jury, seeking exceptions necessary for impeachment purposes. Finally, Plaintiff may not present evidence concerning allegations that Advent is liable for commissions owed by ATI, but, at trial, Plaintiff may present evidence and argument that Advent is liable for commissions owed in connection with previously-exercised renewals of the contracts.

Defendant's *Daubert* Motion to Partially Exclude Testimony of Ronald Hartke, Doc. #51, is OVERRULED AS MOOT.

Date: October 22, 2025

*Walter H. Rice*

WALTER H. RICE
UNITED STATES DISTRICT JUDGE